UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HERTEL, JR., et al.,

        Plaintiffs,

File No. 1:11-CV-757

v.

HON. ROBERT HOLMES BELL

BANK OF AMERICA N.A., et al.,

        Defendants.
_____/

## **OPINION**

This matter is before the Court on the motion for dismissal and summary judgment filed by Defendants the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") against the Plaintiff-Intervenors Michigan Attorney General and Department of Treasury (collectively, "State Plaintiffs"). (Dkt. No. 62.) Intervenor-Defendant the Federal Housing Finance Agency ("FHFA") (collectively with Fannie Mae and Freddie Mac, the "Enterprise Defendants") has joined in this motion. (Dkt. No. 72.) The State Plaintiffs have also moved for summary judgment against the Enterprise Defendants. (Dkt. No. 64.) Also pending, is Defendant Bank of America, N.A.'s motion to join the Enterprise Defendants' motion for dismissal and summary judgment.[1] (Dkt. No. 66.)

---

[1] Bank of America has made this motion in its own name and as successor to Defendants BAC Home Loans Servicing, LP and Countrywide Home Loans Servicing, LP.

For the reasons that follow, the Enterprise Defendants' motion for dismissal and summary judgment will be granted and State Plaintiffs' motion for summary judgment will be denied.  Bank of America's motion for joinder will be denied.

**I.**

On June 22, 2011, Plaintiff Curtis Hertel, Jr., Register of Deeds for Ingham County, commenced an action in state court against Fannie Mae, Freddie Mac, and six other defendants, seeking unpaid transfer tax pursuant to the State Real Estate Transfer Tax Act, Mich. Comp. Laws § 207.523 (1993), and the County Real Estate Transfer Tax Act, Mich. Comp. Laws § 207.502 (1993).  Hertel contended that the statutory taxation exemptions previously relied upon by the defendants were invalid.

That case was removed to this Court on July 22, 2011.  (Dkt. No. 1.)  Subsequently, FHFA (made conservator of Fannie Mae and Freddie Mac in 2008) intervened as a defendant, (Dkt. No. 65), and the Michigan Attorney General and Department of Treasury intervened as plaintiffs (Dkt. No. 61).  The State Plaintiffs, in concurring with Hertel's complaint, seek only the unpaid state real estate transfer tax ("SRETT") from the Enterprise Defendants, along with judgment against Defendants Bank of America, N.A., BAC Home Loans Servicing, LP, Wells Fargo Bank, N.A., and Countrywide Home Loans Servicing, LP to the extent these entities relied upon the Enterprise Defendants' claimed exemptions. (Dkt. No. 67.)  The State Plaintiffs raise no claims against Trott & Trott, PC or Orlans Associates, PC.  (*Id.*)

On February 24, 2012, this Court dismissed Plaintiff Hertel and all related motions. (Dkt. No. 82.) Still pending are the Enterprise Defendants' motion for dismissal and summary judgment, the State Plaintiffs' motion for summary judgment, and Bank of America's motion for joinder.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a defendant carries its burden of showing there is an absence of evidence to support a claim, a plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether

the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

The facts of the present matter are not in dispute. A Michigan state statute provides as follows: "There is imposed, in addition to all other taxes, a tax upon [certain] written instruments executed within this state when the instrument is recorded." Mich. Comp. Laws § 207.523. This tax, the STRETT, is a recording tax that all parties agree constitutes an excise tax. (Dkt. Nos. 62, at 1, 64, at 3.) The statute further states that "[t]he person who is the seller or grantor of the property is liable for the tax imposed under this act." *Id.* All parties agree that certain transfers of foreclosed properties undertaken by the Enterprise Defendants as grantors are covered by the plain language of the SRETT, and noone disputes that the Enterprise Defendants have not been paying this tax. Instead, the dispute centers on whether the Enterprise Defendants' exemptions to taxation under federal statutes apply to an excise tax like the SRETT as a matter of law.

The exemptions in question come from three separate, but parallel federal statutes. For Fannie Mae:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, *shall be exempt from all taxation now or hereafter imposed by any State*, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2) (emphasis added). The statutes regarding Freddie Mac and the FHFA contain virtually identical language. *See* 12 U.S.C. § 1452(e) (exempting Freddie Mac from "all taxation now or hereafter imposed . . . by any State"); 12 U.S.C. § 4617(j)(2) (exempting the FHFA from "all taxation imposed by any State"). Each federal statute contains an exception for "real property," which may be taxed by the state. 12 U.S.C. §§ 1723a(c)(2), 1452(e), 4617(j)(2).

The Enterprise Defendants contend that they are exempt from the SRETT as a matter of law as a result of these federal statutes. In support they rely on the rules of statutory interpretation and Supreme Court decisions. Each will be discussed in turn.

**A. Statutory Interpretation**

The Supreme Court has explained the process of statutory construction and the importance of the text as follows:

> [The Court's] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. [The Court's] inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240 (1989)). *See also, e.g.*, *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1893 (2011); *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009); *United States v. Washington*, 584 F.3d 693, 695 (6th Cir. 2009).

The Enterprise Defendants contend that the language of the exemptions in the statutes

5

at issue is unambiguous. As they read the statutes, "all taxation" means exactly what it says, and there is no need for the Court to continue its inquiry. They contend that under the construction advanced by the State Plaintiffs, the Court would have to rewrite "all taxation" as "some taxation, but not recording taxes," when there is no evidence in the text supporting such a reading. (Dkt. No. 62, at 4.)

As a textual matter, the Enterprise Defendants are correct. There is no possible reading of the statutes other than that Fannie Mae, Freddie Mac, and the FHFA are exempt from all state taxation, regardless of whether it is termed a recording or excise tax. "All" is an inclusive adjective that does not leave room for unmentioned exceptions. Indeed, the fact that one exception is explicitly included further supports this conclusion. Each statute contains an exception for the taxation of real property. *See* 12 U.S.C. §§ 1723a(c)(2), 1452(e), 4617(j)(2). "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980); *see also, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001); *United States v. Johnson*, 529 U.S. 53, 58 (2000). Consequently, the Court finds that the text unambiguously exempts the Enterprise Defendants from all state taxation, with the sole exception of taxes on real property.

However, that finding only ends the inquiry if the statutory scheme remains coherent and consistent under that reading. *See, e.g.*, *Robinson*, 519 U.S. at 340. State Plaintiffs

6

contend that such a reading creates redundancy in the statutory scheme. In particular, they point to another provision in 12 U.S.C. § 4617(j), the statute concerning the FHFA's tax exemption:

> The Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

§ 4617(j)(4). According to the State Plaintiffs, this provision would be surplusage if the FHFA was exempt from state recording taxes; in such a case there would never be a penalty or fine because the FHFA would not owe any such taxes. Thus, they interpret the phrase "all taxation" in § 4617(j)(2) as meaning "all taxation except recording taxation,"[2] and take the next step of interpreting "all taxation" in § 1723a(c)(2) and § 1452(e) in the same manner due to their parallel structure. (Dkt. No. 60, ¶¶ 5-6.)

"It is [the Court's] duty 'to give effect, if possible, to every clause and word of a statute.' " *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). Courts should demonstrate "[a] reluctance to treat statutory terms as surplusage." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Ore.*, 515 U.S. 687, 698 (1995). However, a closer analysis of the statute reveals that the natural reading of § 4617(j)(4) is not rendered surplusage by the natural reading of § 4617(j)(2). Section 4

---

[2] If the State Plaintiff's argument was accepted, the proper interpretation of "all taxation" in § 2 would have to be "all taxation except recording, real property, personal property, and probate taxes." All of these taxes would have to be included as exceptions because all are listed in § 4, not just recording taxes. This makes the State Plaintiff's proposed interpretation of "all taxation" even more unreasonable.

explicitly refers to penalties or fines arising from the failure "of any person" to pay a recording tax. Compare to § 2 which exempts "[t]he Agency" from taxation.

The phrase "any person" is plainly broader than "the Agency," meaning that the two sections are not mutually exclusive. Section 2 exempts the FHFA from all taxation, including reporting taxes, while § 4 serves to immunize the FHFA for fines and penalties arising from the failure of any person – including, notably, non-exempt previous owners – to pay taxes on real estate now owned or managed by the FHFA as conservator of Fannie Mae and Freddie Mac. To the extent that § 4 can also be read to immunizes the FHFA itself from fines or penalties due to its own failure to pay taxes on time – the section refers to "any person" not "non-FHFA persons" –  this is explained by the fact that the section also refers to real property taxes, and the FHFA is explicitly *not* exempt under § 2 from paying real property taxes.

In sum, the meaning of §§ 1723a(c)(2), 1452(e), and 4617(j)(2) is unambiguous, and understanding "all taxation" to mean what it says does not upset the statutory scheme. Under the plain interpretation of these statutes, the Enterprise Defendants are exempt from the SRETT as a matter of law.

**B. Supreme Court Jurisprudence**

However, the State Plaintiffs ask the Court to go beyond the plain interpretation of these statutes. They rely on *United States v. City of Detroit*, 355 U.S. 469, 470 (1958): "[I]n determining whether a tax is actually laid on the United States or its property this Court goes

8

beyond the bare face of the taxing statute to consider all relevant circumstances." But at issue in *City of Detroit* was the reach of a state taxation statute and not the reach of federal exemption statutes. Here the State Plaintiffs desire the Court to go beyond the bare face of the federal exemption statutes and *not* the Michigan taxing statute, the reach of which is not at issue.

However, even assuming for the sake of argument that *City of Detroit* permits the Court to ignore the unambiguous language of federal exemption statutes, the State Plaintiffs present no case. They argue that a line of cases culminating in *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988), establishes that a congressional "all taxation" exemption does not bar excise taxes. State Plaintiffs misconstrue *Wells Fargo*.

*Wells Fargo* concerned a section of the Housing Act of 1937, which stated that "[project-related promissory notes], including interest thereon, issued by public housing agencies in connection with low-income housing projects shall be exempt from all taxation now or hereafter imposed by the United States." 42 U.S.C. § 1437i(b). Despite this exemption, the Court permitted the United States to enforce its estate tax against these notes. As the Supreme Court explained:

> Well before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself.

9

*Wells Fargo*, 485 U.S. at 355.

The State Plaintiffs are correct that this decision establishes that in some circumstances an exemption of *property* from "all taxation" does not include excise taxation. But they then skip a necessary step in their reasoning and jump to the assertion that *Wells Fargo* "reaffirm[s] a long-recognized historical rule: statutes exempting property *or entities* from 'all taxation' do not bar excise taxes because those taxes tax specific privileges, regardless of who exercises them." (Dkt. No. 64, at 5 (emphasis added).) Such language regarding entity tax exemption does not appear in *Wells Fargo* which explicitly limited itself in the quoted material above to "an exemption of property."

Drawing the distinction between property and entities is important to the understanding of *Wells Fargo*. In *Wells Fargo*, "all taxation" in the housing statute still meant all taxation even after the court's decision. The promissory notes remained exempt from the estate tax, even though the estate tax was required to be paid. The reason "all taxation" was still able to retain its meaning is because the estate tax never purported to tax the promissory notes. The estate tax, as noted by *Wells Fargo* in the quoted material above, was a tax on the *transfer* of property, not the property itself. And because the statute specified an exemption *only* for the property and not its owner or its transfer, the exemption was never triggered even though it was the owner of the promissory notes who was liable for the tax.

In contrast, the present statutes have a broader exemption. They exempt the entities,

10

not just the property involved, with means that the exemption *is* triggered if the owners of the property, the Enterprise Defendants, are held liable for the SRETT. While the SRETT is a tax on the transfer of property, to tax the transfer is to tax the entity who has to pay the tax, and by statute, the Enterprise Defendants are exempt from all taxation.

It defies common sense to argue that a tax on a transfer is not also a tax on the entity that has to pay it. Yet this is what State Plaintiffs attempt to do, drawing an artificial distinction for tax exemption purposes between the corpus taxed and the direct liability for that tax. (Dkt. No. 64, at 5-7.) Such a distinction allows them to reconcile *Wells Fargo* with their desired result in this case: a transfer tax would not be a tax on property or on an entity, meaning it must always be paid, regardless of any statutory exemption.

But the natural consequence of this distinction – and the slippery slope Plaintiffs ignore – is that such a distinction would also have to apply to direct taxes. Every tax can be construed as only applying to the corpus taxed. To say that a transfer tax only taxes an entity's transfer is equivalent to saying that the income tax only taxes an entity's income. And that means that under the State Plaintiffs' interpretation of *Wells Fargo*, the statutory exemption of the Enterprise Defendants from "all taxation" does not just fail to exempt them from the SRETT. It also must contradictorily fail to exempt them from the state income tax, personal property tax, probate tax, and every other tax.

While the State Plaintiffs attempt to buttress this extension to tax-exempt entities through reliance on *West v. Oklahoma Tax Comm'n*, 334 U.S. 717 (1948), this reliance is

11

Case 1:11-cv-00757-RHB   Doc #103   Filed 09/18/12   Page 12 of 15   Page ID#1899

misplaced. *West* did not concern the imposition of excise taxes on a tax-exempt entity. Instead, the excise tax (an inheritance tax in that case) taxed the transfer of interest in trust properties from an Osage Native American to his mother upon his death, and neither the mother nor the decedent were exempt from the inheritance tax. (*Id.* at 725-26.) Plaintiffs attempt to rely on the fact that the United States, a constitutionally exempt entity, held the trust property in question in that case. However, the *West* court did not hold that the United States's tax exemption did not apply to excise taxes. Instead it merely found that "[i]n this setting" the mother could not rely on the tax-exempt status of the United States to exempt a transfer that occurred between her and her son, regardless of who held legal title to the trust properties. *Id.* at 727. "It is the transfer of these incidents, rather than the trust properties themselves, that is the subject of the inheritance tax in question." *Id.* The Court never held, as State Plaintiffs claim, that a "property owner's exemption status is 'immaterial' to whether an excise tax applies." (Dkt. No. 64, at 6 n.5.)

     Further attempts by the State Plaintiffs to support their argument fail as well. Plaintiffs try to equate the SRETT with the transfer tax at work in a 1900 Supreme Court case. *See Plummer v. Coler*, 178 U.S. 115 (1900). "Michigan's transfer tax actually works exactly the same as New York's estate tax in *Plummer*. And our Supreme Court held that *Plummer* survived a tax exemption." (Dkt. No. 80, at 7 (internal citations omitted).) However, what State Plaintiffs fail to mention is that the tax exemption in question in *Plummer* was the tax-exempt status of property, namely United States Bonds. Thus it makes

no difference whether the tax discussed in that case was similar to the SRETT,[3] and *Plummer* can offer no more support to Plaintiffs than *Wells Fargo* which also involved tax-exempt property and not a tax-exempt entity. The remaining cases relied upon by Plaintiffs similarly involved tax-exempt property and are similarly unpersuasive. *See Murdock v. Ward*, 178 U.S. 139, 146-47 (1900); *United States v. Fox*, 94 U.S. 315 (1877).

In a case that did involve a tax-exempt entity and an excise tax, the Supreme Court upheld the tax exemption. *See Fed. Land Bank v. St. Paul Bismarck Lumber Co.*, 314 U.S. 95 (1941).[4] At issue was an exemption similar to that enjoyed by the Enterprise Defendants. Section 26 of the Federal Farm Loan Act read as follows: "every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation." 12 U.S.C. §§ 931-933 (repealed 1971). The Court found that this language could not be "frittered away" and clearly precluded applying a state sales tax to the Federal Land Bank. *Bismarck*, 314 U.S. at 99.

Plaintiffs' attempts to distinguish this case on the ground that a direct tax was involved are fruitless. The sales tax is described many times in *Bismarck* as a tax on a

---

[3] Plaintiffs' assertion that whether an "all taxation" exemption statute actually exempts a tax depends on if the tax in question is "paid directly out of the value transferred" (Dkt. No. 80, at 7) has no basis in law and is unconvincing.

[4] The applicability of the other Supreme Court cases in the *Bismarck* line cited by the Enterprise Defendants is a closer call because it is not clear that they involved excise taxes. *Federal Land Bank of New Orleans v. Crosland*, 261 U.S. 374 (1923), involved a state statute requiring the payment of "privilege or license taxes," later described as a "recording or registration tax." *Id.* at 377. However, the Court also said that "it is a tax upon the mortgage" rather than on the recordation. *Id.* at 378. A similar distinction was made in *Pittman v. Home Owners' Loan Corp. Of Washington, D.C.*, 308 U.S. 21 (1939), and *Laurens Fed. Sav. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517 (1961). Thus these cases are not discussed.

transfer. For example, the Supreme Court describes it as "a sales tax upon purchases" and a "tax upon the sale." *Id*. at 101, 103. Indeed, "the quintessential excise tax in our country is the sales tax." *United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1185 (9th Cir. 2006). The fact that "the incidence" of the sales tax fell on a person makes no difference, despite Plaintiffs' claims. (Dkt. No. 64, at 10.) In fact, the incidence of all taxes, including all excise taxes, falls on a person.

Instead, as Plaintiffs admit earlier in their brief, the distinction between an excise tax and a direct tax is that the former is imposed upon the performance of an act or the enjoyment of a privilege and the latter is imposed on property. (Dkt. No. 64, at 3 (citing *Market Place v. Ann Arbor*, 351 N.W.2d 607 (Mich. Ct. App. 1984)).) The Supreme Court has recognized this distinction: "[A]n excise tax . . . is levied on the use or transfer of property even though it may be measured by the property's value," while a property tax is "levied upon the property itself." *Wells Fargo*, 485 U.S. at 355. A sales tax cannot be said to be a tax directly on the property sold because it is only incurred when the property is transferred to another. Thus *Bismarck* is controlling in the present case, and the Enterprise Defendants' tax exemptions are applicable to excise taxes as a matter of law.

**IV.**

State Plaintiffs ask the Court to ignore the unambiguous language of multiple federal statutes and impose tax liability on the Enterprise Defendants under a Michigan statute, without providing a satisfying explanation as to why, after years of having no problem with

14

the defendants' claimed exemptions, there is an issue now.[5] Ignoring this timing, the legal justification for such a decision is sparse. Plaintiffs primarily rely upon the *Wells Fargo* line of Supreme Court cases, but these decisions do not involve or address tax-exempt entities at all.

The one case that does address a tax-exempt entity, *Bismarck*, holds that the tax exemption remains valid even with an excise tax. Therefore, because there is no genuine dispute as to material fact and the Enterprise Defendants' have established as a matter of law that they are exempt from the SRETT, they are entitled to summary judgment.

Remaining is Bank of America's motion to join the motion for dismissal and summary judgment. The State Plaintiffs maintain no claims against the non-Enterprise Defendants except to the extent that they relied upon the Enterprise Defendants' exemptions in transfers that did not involve the Enterprise Defendants. (Dkt. No. 73, ¶¶ 4-6; Dkt. No. 79., Tr. at 41-42.) This issue has not been briefed and thus cannot be resolved by the pending motions for summary judgment. Consequently, the motion for joinder will be denied.

An order consistent with this opinion will be entered.


Dated: September 18, 2012          /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   UNITED STATES DISTRICT JUDGE

---

[5]The State Plaintiffs' proffered justifications are unconvincing. First, they argue that before the mortgage crisis the defendants were "not likely involved in many real property sales in any state at any given time." (Dkt. No. 80, at 2.) Second, they rely on Fannie Mae's 2010 Servicing Guidelines Update, which they claim proves that Fannie Mae pays transfer taxes in some states. (*Id.* at 2-3.) Lastly, they argue that "[s]tates may vary their transfer tax laws in many ways, and so no universal rule is possible." (*Id.* at 3.) None of these arguments evidence any change in the law which might spur such a suit after years of complacency.